## Kelly v. McKelvin

*Levin, Levin & Levin,* for plaintiffs.

*Max E. Cohen,* for defendant.

HAGAN, J., December 12, 1956.—This is an action in trespass, in which plaintiffs are husband and wife, and defendants are John McKelvin, an alleged tortfeasor, and the Nationwide Insurance Co., his liability insurance carrier.

The first count of the complaint is by the wife plaintiff against the individual defendant, McKelvin. It is an ordinary count in negligence for personal injuries alleged to have been sustained by wife plaintiff as a result of the negligent operation by McKelvin of his automobile. The prayer of this count is for money damages in the sum of $50,000. The second count sets forth the usual cause of action by the husband plaintiff

against McKelvin for expenditures made by the husband as a result of his wife's injuries and for loss of her consortium.

The third count of the complaint is by the wife plaintiff against both McKelvin and Nationwide Insurance Co., and it avers the following facts:

A claims adjuster of Nationwide obtained a release from the wife plaintiff through certain fraudulent conduct set forth at length in the complaint. The release purported to discharge McKelvin, Nationwide's assured, from liability arising from the accident, in consideration of (a) $55.20 paid by Nationwide to the hospital at which the wife plaintiff was treated, and (b) a check for $211 to the order of and delivered to the wife plaintiff by Nationwide. It is averred that the adjuster, in performing the alleged fraudulent acts, acted within the scope of his employment for Nationwide and McKelvin and "pursuant to their express instructions."

It is further averred that plaintiff, through her attorney, had offered to return the $211 check, which she had never cashed, and to reimburse Nationwide for the $55.20 paid to the hospital. For these sums plaintiff demanded the return of the release which she had signed. Nationwide accepted the $211 check from plaintiff, but refused to accept the $55.20 check, and further refused to return the release. This conduct by Nationwide, the complaint avers, constituted ratification of the adjuster's fraudulent conduct.

The third count of the complaint concludes: "As a result of the said fraud, the plaintiff, Anna S. Kelly, has been deprived of a cause of action against the defendant, John McKelvin, set forth in the first count hereof." The prayer of the third count, therefore, is for $50,000, the same sum demanded in the first count.

To this complaint both defendants filed preliminary

objections, which are now before the court for disposition.

Accepting, as we must at this stage of the proceedings, plaintiffs' averment that the claim adjuster's fraudulent conduct was performed pursuant to the express instructions of both defendants, plaintiffs have set forth a prima facie cause of action against both defendants for fraud. Viewing the complaint in the light most favorable to plaintiffs, we find, therefore, that they have averred that defendants were guilty of fraud in securing a release from the wife plaintiff, and have requested alternative and inconsistent modes of relief from that fraud. Thus, in the third count plaintiffs have chosen to *affirm* the fraudulent conduct of defendants' agent and have sued for the damages resulting therefrom. In the first two counts, although plaintiffs do not so state, they have clearly chosen to *disffiarm* the fraudulent conduct of defendants' agent, since they are suing directly on the original cause of action. Such alternative prayer for relief is proper under Pa. R. C. P. 1021.

When plaintiffs' two alternative theories are closely examined it will be seen that the practical difference between them is more illusory than real. Under either theory plaintiffs must first prove the fraudulent conduct of the claims adjuster and that such conduct is legally imputable to defendants. If plaintiffs fail to prove this, their case, of course, falls under either theory. If fraud and agency are established, and if plaintiffs should choose to proceed on the first two counts of the complaint, they would be suing on their original cause of action in negligence and would be required to prove the requisites of such a cause of action. If, on the other hand, plaintiffs, after having proved fraud and agency, should choose to proceed on the third count, they would be entitled to what they

would have recovered had they been permitted to sue under the first two counts. To prove damages under the third count, plaintiffs, therefore, would be put to exactly the same proof required as if they had sued under the first two counts. Thus it will be seen that under either theory, affirmance or disaffirmance of the fraudulent conduct of the claims adjuster, plaintiffs must first prove the fraud, and second, prove their negligence action.

An orderly method of procedure in this matter, and one which would avoid the possibility of any prejudice to defendants which might arise from trying the fraud and negligence actions in one trial, would be to sever the issues of fraud and negligence and try first the issue of fraud. If plaintiffs should not prevail in that issue, there would then be no need to proceed further. If plaintiffs should succeed on that issue, they could then proceed to trial to prove their negligence action. The authority for such an order is contained in Pa. R. C. P. 213(b), which provides: "The court, in furtherance of convenience or to avoid prejudice, may, on its own motion, or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues."

For the foregoing reasons, we enter the following order.

Defendants' preliminary objections to plaintiffs' complaint are hereby dismissed. The issues of fraud and negligence are to be tried separately. The issue of fraud is to be tried first, and if plaintiffs prevail upon that issue, the issue of negligence is then to be tried.